UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LUIS COLON, | : | |
| | : | |
| Petitioner, | : | **REPORT AND** |
| | : | **RECOMMENDATION** |
| - against - | : | |
| | : | **05 Civ. 8439 (LAP) (RLE)** |
| GARY GREENE, | : | |
| | : | |
| Respondent. | : | |

To the HONORABLE LORETTA A. PRESKA, U.S.D.J.:

## I. INTRODUCTION

*Pro se* petitioner, Luis Colon ("Colon"), a New York state prisoner at Great Meadow

Correctional Facility, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254,

which was received by the *Pro Se* Office in this District on September 26, 2005.  Colon was

convicted of murder in the first degree (N.Y. Penal Law § 125.27(1)), three counts of murder in

the second degree (N.Y. Penal Law § 125.25(1); 125.25(2); 125.25(3)), two counts of robbery in

the first degree (N.Y. Penal Law § 160.15(1); 160.15(3)), robbery in the second degree (N.Y.

Penal Law § 160.10(1)), and criminal possession of a weapon in the fourth degree (N.Y. Penal

Law § 265.01(2)), and sentenced to life imprisonment without parole.

Colon contends that his incarceration violates the United States Constitution in that:

1) the verdict of guilt went against the weight of the evidence in violation of his Fourteenth

Amendment rights; 2) involuntary statements not suppressed violated his rights under the Fourth

and Fifth Amendments; and 3) his sentence of life imprisonment without parole was excessive

and contrary to law.  Petition under 28 U.S.C. § 2254 ("Pet.") ¶ 175.  For the reasons set forth

below, I recommend that the petition be **DENIED**.

## II. BACKGROUND

**A.**   **Factual Background**

**1.**   **The Crime**

Colon was convicted of the robbery and murder of William Layton, Jr. ("Layton"). Trial testimony revealed that on August 10, 1998, Colon, along with co-defendant Jesse Hunter ("Hunter"), went to Layton's residence to commit a robbery. Trial Transcript ("Tr.") at 87-88. The murder weapons (two kitchen knives), a VCR belonging to Layton, $60 from Layton's wallet, and Layton's automobile were taken from the residence. **Id**. at 317-20. Each defendant implicated the other as the one who murdered Layton, **id**. at 308-20, 779-83, but Hunter's account of the facts surrounding the crime were corroborated by other witnesses at trial. **Id**. at 84-87, 96, 111, 120-21, 197-210, 225-32. In addition, Colon gave a signed confession stating that he killed Layton, and the confession was admitted into evidence. Colon testified, and denied stabbing Layton or confessing to police officers. **Id**. at 798-800.

**2.**   **The Interrogation**

Colon was arrested on August 13, 1998, and subjected to a full day of police questioning. Respondent's Memorandum of Law ("Resp. Mem.") at 2-4; Tr. at 684-89. Police testimony indicated that Colon was arrested at approximately 11:00 a.m., and arrived at the police station about 11:25 a.m. Resp. Mem. at 16. Senior Investigator Dennis Marsh ("Marsh") testified at the preliminary hearing that he personally read Colon the **Miranda** warnings directly from his card when he arrived at the police station. Hearing Transcript ("H. Tr.") at 7-9; Tr. at 411-15. After the **Miranda** warnings, Colon waived his rights and agreed to speak with police without asking for a lawyer.

2

From approximately 11:25 a.m., when Colon arrived, to approximately 3:00 p.m., Marsh and Investigator Kevin McGrath ("McGrath") interviewed Colon in Senior Investigator Paul Krajawski's ("Krajawski") office.  Resp. Mem. at 2-3, 17; Tr. at 668-70.  In order to permit McGrath and New York State Police Investigator Stephen Riordan ("Riordan") to investigate and confirm information, Colon was not questioned again until approximately 5:45 p.m.  Resp. Mem at 17-18; Tr. at 672.  Colon was then moved to an interviewing room and questioned until approximately 7:30 p.m. by McGrath and Riordan.  Resp. Mem. at 4, 20; Tr. at 672.  While in Krajawski's office, the interview was periodically stopped in order to permit Colon to eat, smoke, use the restroom, and make phone calls.  Resp. Mem. at 17, Tr. at 692; H. Tr. at 51-52.  Police investigators testified that Colon was not threatened nor offered any promises in exchange for his statement, and he did not ask for the questioning to stop or to speak to an attorney. Resp. Mem. at 17; Tr. at 693-94.  While Marsh questioned Colon, McGrath took notes, which he used to prepare the written statement later signed by Colon at approximately 10:40 p.m.  Resp. Mem. at 20; H. Tr. at 27.  McGrath knew Colon could not read English, so he read the entire narrative portion of the statement to Colon.  H. Tr. at 52.  When McGrath finished reading, he asked Colon whether the statement was accurate and whether he wanted to change anything.  **Id**.  Colon agreed that the statement was accurate, and did not want to change any of it.  **Id**.  McGrath then read the top portion of the statement which consisted of a <u>Miranda</u> warning.  **Id**. at 52-53.  Colon again waived his <u>Miranda</u> rights by printing his signature, initialing each page, and then signing at the end of the statement.  **Id**. at 53.

   3.    **The Trial**

Colon's version of the events that took place during his interrogation differed from that

given by police.  He testified that he only received a sandwich and cigarettes, Tr. at 794-95, and that he was handcuffed and shackled during the entire interrogation.  **Id**. at 791, 796.  With regard to the signed statement, Colon testified that he was not told what he was signing, but that the police simply told him to sign a document.  **Id**. at 793, 878.  He also denied confessing to killing Layton, **id**. at 799, and testified that he specifically asked police officers for a lawyer.  **Id**. at 870.  Colon claimed that he was familiar with the content of <u>Miranda</u> warnings because of his prior misdemeanor charges, and therefore he knew police did not provide him those warnings. **Id**. at 792-93.

Three of Colon's friends testified he had expressed his intent to commit a robbery on the night of August 10, 1998, and had solicited others to help him.  **Id**. at 84, 111, 120-21.  Randy Ortega ("Ortega") testified that Colon had said he would cut the throat of his robbery victim if necessary.  **Id**. at 96.  Joseph Lightfoot ("Lightfoot") testified that Colon and Hunter came to his home the evening of the crime, and Colon was holding a VCR and was covered in blood.  **Id**. at 225-27.  Lightfoot testified that Colon told him he had just gotten into a fight.  **Id**. at 227.  While at Lightfoot's residence, Colon gave Lightfoot $30 and the VCR in exchange for drugs, and discarded the two steak knives, **id**. at 229-32, which were later recovered from Lightfoot's residence.  **<u>Id</u>**. at 236-37.  Dean Joseph Reagan ("Reagan") also testified that Colon came to his residence at approximately 2:00 a.m. on August 11, 1998.  **Id**. at 197-98.  He had a bump on his lip and said that he had been in a fight .  **Id**.

The jury found Colon guilty of all charges. **Id**. at 1052-56.  At sentencing, Colon's defense attorney argued that Colon was only twenty years old at the time of his arrest, could not read or write in English or Spanish, had only completed a sixth grade education, possessed a

marginal IQ of approximately 60, and had been placed in foster care as a child because of his mother's misconduct and drug addiction. Sentencing Minutes ("S.") at 9; Tr. at 765. On the first count, murder in the first degree, Colon was sentenced to life in prison without parole. S. at 12-14. He was sentenced to terms of twenty-five years to life on each of the three counts of murder in the second degree. **Id**. He was sentenced to a term of twelve and one half to twenty-five years on each of the two counts of robbery in the first degree, to be served consecutively with the three sentences of twenty-five years to life on the second degree murder counts. **Id**. For the seventh count, robbery in the second degree, Colon was sentenced to seven and one half to fifteen years in prison. **Id**. Finally, for the eighth count, criminal possession of a weapon in the fourth degree, Colon was sentenced to one year in prison, to be served concurrently with his other sentences. **Id**.

**B.     Procedural Background**

Colon appealed his conviction, which was affirmed by the Appellate Division on March 15, 2004. **People v. Colon**, 774 N.Y.S.2d 716 (App. Div. 2004). On appeal, he raised three claims: 1) the verdict of guilt went against the weight of the evidence; 2) the statements he gave to the police were not voluntarily given and should have been suppressed; and 3) under the circumstances the sentence was excessive. In rejecting his claims, the court found that credibility and issues pertaining to the weight of evidence presented at trial are primarily questions for the jury. **Id**. at 717. The court was satisfied that the verdict was not against the weight of the evidence. **Id**. The court found that the testimony at the suppression hearing established that Colon's statements had been voluntarily given after he had been informed of his **Miranda** rights. **Id**. The court also found that Colon waived his rights, without coercion or promises from police.

5

**Id**.  Finally, the court held that the sentence imposed was not excessive as a matter of law.  **Id**.  Leave to appeal to the New York Court of Appeals was denied on June 14, 2004.  **People v. Colon**, 3 N.Y.3d 638 (2004).

### III. DISCUSSION

A.      **Threshold Issues**

1.      **Timeliness**

A petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final.  *See* 28 U.S.C. § 2244(d)(1).  A conviction becomes final "'when [the] time to seek direct review in the United States Supreme Court by writ of certiorari expire[s],'" that is, ninety days after the final determination by the state court.  **Williams v. Artuz**, 237 F.3d 147, 151 (2d Cir. 2001) (*quoting* **Ross v. Artuz**, 150 F.3d 97, 98 (2d Cir. 1998)).  Leave to appeal to the New York Court of Appeals was denied on June 14, 2004.  **People v. Colon**, 3 N.Y.3d 638 (2004).  Therefore, Colon's one-year statute of limitations period ended September 12, 2005.  The *Pro Se* Office of United States District Court for the Southern District of New York received Colon's initial habeas petition on September 26, 2005.  However, the prison mailbox rule applies to habeas petitions, and the date on which Colon handed his petition to prison authorities for mailing is the date of filing for habeas purposes.  **Noble v. Kelly**, 246 F.3d 93, 97-98 (2d Cir.), *cert denied*, 534 U.S. 886 (2001).  There is no indication in the record when Colon gave his petition to prison authorities, but since respondent has not challenged the timeliness of the petition, and given the likely delay between submission to prison authorities and delivery to the *Pro Se* Office, the Court finds that Colon's petition is timely.

6

**2.      Exhaustion**

Pursuant to 28 U.S.C. § 2254(b), as amended by the Antiterrorism and Effective Death

Penalty Act ("AEDPA"), the Court may not grant a petition for habeas corpus unless the

petitioner has exhausted all state judicial remedies.  28 U.S.C. § 2254(b)(1)(A); **Picard v.**

**Connor**, 404 U.S. 270, 275 (1971); **Dorsey v. Kelly**, 112 F.3d 50, 52 (2d Cir. 1997).  In order to

satisfy substantive exhaustion, a petitioner's claim before the state courts must have been federal

or constitutional in nature.  Although not an exacting standard, a petitioner must have informed

the state courts of  "'both the factual and the legal premises of the claim [he] asserts in federal

court.'"  **Jones v. Vacco**, 126 F.3d 408, 413 (2d Cir. 1997) (*quoting* **Daye v. Attorney Gen.**,

696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), *cert. denied*, 464 U.S. 1048 (1984).  The claim must

not only have been presented to the state courts, but the state courts must have had notice of the

federal nature of the petitioner's claim.  **Daye**, 696 F.2d at 191.  A petitioner may give such

notice by:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on
> state cases employing constitutional analysis in like fact situations, (c) assertion of the
> claim in terms so particular as to call to mind a specific right protected by the
> Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of
> constitutional litigation.

**Id**. at 194.  Procedurally, the petitioner must have utilized all avenues of appellate review within

the state court system before proceeding to federal court.  *See* **Bossett v. Walker**, 41 F.3d 825,

828 (2d Cir. 1994).  He must have raised a federal claim at each level of the state court system,

"present[ing] the substance of his federal claims 'to the highest court of the pertinent state.'"  **Id**.

7

(*quoting* **Pesina v. Johnson**, 913 F.2d 53, 54 (2d Cir. 1990)).  Here, Colon has satisfied the

procedural exhaustion requirement because he has properly presented each of the three claims to

both the Appellate Division and Court of Appeals.

**B.      Merits of the Claims**

        **1.      Standard of Review**

The AEDPA constrains a federal habeas court's ability to grant a state prisoner's

application for a writ of habeas corpus with respect to claims adjudicated on the merits in state

court.  The Act limits issuance of the writ to circumstances in which the state adjudication

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C.

§ 2254(d)(1); *see* **Williams v. Taylor**, 529 U.S. 362, 412 (2000).  A state court decision is

contrary to federal law if the state court applies "a conclusion opposite to that reached by [the

Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court

has on a set of materially indistinguishable facts."  **Williams**, 529 U.S. at 413.  Furthermore, in

cases where the state court decision rests on a factual determination, the federal court must find

that the "decision . . . was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

        **2.      Legal Sufficiency of the Evidence Claim**

Colon's claim that the verdict was against the weight of evidence is a "pure state law

claim" grounded in procedural law.  **Peralta v. Bintz**, 2001 WL 800071, at *4 (S.D.N.Y. July 16,

2001).  In contrast, a claim of legal insufficiency of evidence would constitute a federal claim.

**Ventura v. Artuz**, 2000 WL 995497, at *7 (S.D.N.Y. July 19, 2000) (*quoting* **McPherson v. Coombe**, 174 F.3d 276, 280 (2d Cir. 1999)).  A *pro se* petitioner's pleadings are construed liberally and interpreted "to raise the strongest argument that they suggest."  **Id**.  A court may construe a *pro se* petitioner's "against the weight of the evidence" claim as a federally cognizable "sufficiency of the evidence" claim.  **Id**.  Colon's claim may be construed in this manner.

The due process clause of the Fourteenth Amendment guarantees that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof."  **Jackson v. Virginia**, 443 U.S. 307, 316 (1979); *see also* **In re Winship,** 397 U.S. 358, 364 (1970).  Sufficient proof requires evidence necessary to convince the trier of fact "beyond a reasonable doubt of the existence of every element of the offense."  **Jackson v. Virginia**, 443 U.S. at 316.  Accordingly, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  **Id**. at 324.

Here, the evidence was sufficient to prove that Colon committed the robbery and murder of Layton.  The prosecution presented thirty-six witnesses to testify against Colon at trial.  For example, Ortega testified that, prior to the crime, Colon stated his intent to commit a robbery, and his willingness to slit the throat of the victim who stood in his way.  Tr. at 96.  Lightfoot testified that he saw Colon with blood on his face, shirt, and hands, and that Colon paid him $30 and a VCR in exchange for drugs.  **Id**. at 225-29.  Additional testimony was provided by Barbara Nieves, who shared a child with Colon, that, while she was visiting him in jail, he confessed that

he had slit Layton's throat during the robbery.  **Id**. at 467-69.  Ample physical evidence, including the murder weapon (two steak knives), and the stolen VCR were also introduced as evidence.  **Id**. at 235-37.  When viewed in the light most favorable to the prosecution, ***see*** **Jackson v. Virginia**, 443 U.S. at 319, a trier of fact could have found that the essential elements of murder and robbery were proven beyond a reasonable doubt.  Therefore, Colon's claim that the verdict was based on legally insufficient evidence lacks merit, and should be **DENIED**.

      **3.**        **Involuntary Statements Claim**

Colon contends that his Fifth Amendment rights were violated because his signed statement was improperly admitted at trial.  The Fifth Amendment privilege against self-incrimination guarantees a suspect the right "to remain silent unless he chooses to speak in the unfettered exercise of his own will." **Miranda v. Arizona**, 384 U.S. 436, 460 (1966) (***citing*** **Malloy v. Hogan**, 378 U.S. 1, 8 (1964)).  Only those statements a suspect makes of his own free will may be used against him in a court of law, and a confession is only voluntary when it is truly "the product of his free choice." **Miranda**, 384 U.S. at 458.  A voluntary waiver must satisfy the knowing and intelligent requirement which is "ordinarily an intentional relinquishment or abandonment of a known right or privilege." **Johnson v. Zerbst**, 304 U.S. 458, 464 (1964).

Whether an accused has waived the privilege against self-incrimination, and thus whether a confession was voluntary, is "determined only after careful evaluation of the totality of the surrounding circumstances." **Green v. Scully**, 850 F.2d 894, 901 (2d Cir. 1988).  Furthermore, whether a waiver was voluntary is a legal question which requires *de novo* review. ***See*** **United States v. Anderson**, 929 F.2d 96, 99 (2d Cir. 1991) (***citing*** **Miller v. Felton**, 474 U.S. 104, 115

10

(1985)).  The court should consider the characteristics of the accused, the conditions of the

interrogation, and the conduct of law enforcement officials.  **Green**, 850 F.2d at 901-02.

Relevant characteristics of the accused include age, education, and background.  ***See***

**Schneckloth v. Bustamonte**, 412 U.S. 218, 226 (1973).  Relevant aspects of the interrogation

include the conditions under which the suspect is questioned and the presence or absence of

counsel.  ***See* Mincey v. Arizona**, 437 U.S. 385, 398-99 (1978); **Schneckloth**, 412 U.S. at 226;

**Miranda**, 384 U.S. at 469; **United States v. Guarno**, 819 F.2d 28, 30 (2d Cir. 1987).  Factors

critical to determining the effect of the interrogator's conduct include the "repeated and

prolonged nature of the questioning or the failure to inform the accused of his constitutional

rights," along with the presence of physical mistreatment, such as prolonged restraint in

handcuffs or depriving the accused of food, water or sleep.  **Green**, 850 F.2d at 902 (internal

citations omitted).

 While Colon testified he was never provided a **Miranda** warning, a judge could have

reasonably determined the testimony of police investigators Marsh and McGrath to be credible,

thus justifying the conclusion that statements made to police after Colon waived his **Miranda**

rights were voluntary.  Furthermore, signed statements which have been typed by police and read

back to the suspect for corrections may be used at trial.  ***See* Oregon v. Elstad**, 470 U.S. 298,

301 (1985).  Given the circumstances in this case, the trial court could have reasonably found

Colon's statements to be voluntarily.  Moreover, Colon does not allege, nor does the record

reflect, that his waiver and subsequent statement were the product of deception, coercion or false

promises by police investigators.  Therefore, Colon's claim that the use if his statement at trial

violated his Fifth Amendment rights should be **DENIED**.

11

### 4.    Excessive Sentence Claim

Colon claims that his sentence of life without parole for murder in the first degree is excessive.  The Eighth Amendment of the United States Constitution prohibits cruel and unusual punishment, that is, "punishment that shocks the collective conscience of society."  **United States v. Gonzalez**, 922 F. 2d 1044, 1053 (2d Cir. 1991).  In order to violate the Amendment, a sentencing decision must present "extraordinary circumstances."  **Herrera v. Artuz**, 171 F. Supp. 2d 146, 151 (S.D.N.Y. 2001) (**quoting Alcedo v. Artuz**, 107 F. Supp. 2d 405, 414 (S.D.N.Y. 2000)).  To present a federal claim, "a petitioner must show the trial court's sentencing decision amounted to an improper, 'arbitrary or capricious abuse of discretion' that deprived the petitioner of his liberty."  **Id**. (**quoting Jones v. Hollins**, 884 F. Supp. 758, 761-62 (W.D.N.Y.), **aff'd**, 89 F.3d 826 (2d Cir. 1995)).

Under New York law, when a defendant is convicted of murder in the first degree, the court can sentence the defendant to death, life imprisonment without parole, or a term of imprisonment less than a life sentence.  N.Y. Crim. Proc.Law §§ 70.00, 400.27.  If sentenced to an indeterminate prison term, the minimum term must be between twenty and twenty-five years and the maximum term is life imprisonment.  N.Y. Crim. Proc.Law §§ 70.00(2)(a), 70.00(3)(a)(I).  Colon was sentenced to life in prison without parole.  Since this sentence is within the limits set by the state legislature, the sentence does not violate the Eighth Amendment, and no federal question is presented.  Furthermore, there is no basis for habeas corpus relief for a sentence that falls within a state's statutory guidelines.  *See* **White v. Keane**, 969 F.2d 1381, 1383 (2d Cir. 1992); **Baez v. Morrissey**, 2006 WL 1643004, at *4 (S.D.N.Y. June 14, 2006); **Brown v. Goord**, 2002 WL 31093611, at *5 (S.D.N.Y. Sept. 13, 2002).  Colon's claim that his

sentence is excessive is without merit, and should be **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, I recommend that Colon's petition for a writ of habeas corpus

be **DENIED.** Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten

(10) days after being served with a copy of the recommended disposition to file written

objections to this Report and Recommendation. Such objections shall be filed with the Clerk of

the Court and served on all adversaries, with extra copies delivered to the chambers of the

Honorable Loretta A. Preska, 500 Pearl Street, Room 1320, and to the chambers of the

undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those

objections both in the District Court and on later appeal to the United States Court of Appeals.

*See* **Thomas v. Arn**, 474 U.S. 140, 150 (1985); **Small v. Secretary of Health and Human**

**Services**, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp.

1995); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: February 27, 2007**
**New York, New York**

**Respectfully Submitted,**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

## Copies of this Report and Recommendation were sent to:

Petitioner, *pro se*
Louis Colon
Prisoner Identification No. 99-A-3608

13

Great Meadow Correction Facility
P.O. Box 51
Comstock, New York 12821

Counsel for Respondent
Francis D. Phillips, III
District Attorney of Orange County
County Government Center
Goshen, New York 10924